Docket No. 105018.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE BOARD OF EDUCATION, JOLIET TOWNSHIP HIGH SCHOOL DISTRICT No. 204, Appellee, v. THE BOARD OF EDUCATION, LINCOLN WAY COMMUNITY HIGH SCHOOL DISTRICT No. 210 *et al.* (The Illinois State Board of Education *et al.*, Appellants).

*Opinion filed October 17, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion.

## OPINION

In 1998, the registered voters of a 320-acre parcel of land in Will County filed a petition to detach the parcel from Joliet Township High School District No. 204 and annex it to Lincoln Way Community High School District No. 210, pursuant to section 7–2b of the Illinois School Code (105 ILCS 5/7–2b (West 1998)). District 204 objected to the petition and argued *inter alia* that section 7–2b violates the Equal Educational Opportunities Act of 1974 (EEOA) (20 U.S.C. §1701 *et seq.* (2000)). The hearing officer for the Illinois

State Board of Education (Board) found that the conditions of section 7–2b were met and recommended that the petition be granted. District 204's EEOA claim was not considered when the hearing officer made this recommendation, as the hearing officer found that the claim was outside the scope of the Board's authority under section 7–2b. The Board accepted the hearing officer's findings and granted the petition for detachment/annexation. The circuit court of Will County affirmed the Board's order and found that the order did not violate the constitution or federal statute. On appeal, the appellate court found that section 7–2b was preempted by the EEOA and was, therefore, unconstitutional. 373 Ill. App. 3d 563. The appellate court remanded the cause to the Board to consider District 204's EEOA claim. The Board filed a petition for leave to appeal pursuant to Supreme Court Rules 317 (210 Ill. 2d R. 317) and 315 (210 Ill. 2d R. 315). This court granted the Board's petition and for the following reasons, we reverse the judgment of the appellate court and remand the cause to the circuit court for consideration of District 204's EEOA claim.

BACKGROUND

In July of 1998, four individuals who made up all of the registered voters of a contiguous 320-acre parcel of farm land in Will County filed a petition with the Illinois State Board of Education (Board) to detach their property from Joliet Township High School District No. 204 (District 204) and attach it to Lincoln Way Community High School District No. 210, pursuant to section 7–2b of the Illinois School Code (105 ILCS 5/7–2b (West 1998)).

The parcel of land in question is situated in an area of the state where the grade schools and high schools are split into separate school districts and the boundaries of these districts are not coterminous. The children who reside on the disputed parcel of land currently attend grade school in the New Lenox Elementary School District No. 122. The high school district that generally serves the New Lenox Elementary School District is Lincoln Way Community High School District No. 210. However, the parcel of land in question does not fall within the boundaries of High School District 210, it falls within the boundaries of Joliet High School District No. 204. Thus the children who reside on the parcel will not attend the same high school as the majority of their former grade school classmates.

Section 7–2b allows for the detachment of land from one district and annexation to another where the affected land lies within elementary and high school districts with noncoterminous boundaries. Section 7–2b allows the land to be detached and annexed at either the elementary or high school level. Thus, it is the petitioner's choice which district they leave and which they join. 105 ILCS 5/7–2b(a) (West 1998). A parcel of land is eligible for detachment and annexation only if (1) it represents 10% or less of the equalized assessed value of the district; (2) the parcel constitutes 10% or less of the territory of the district;[1] (3) two-thirds of the registered voters of the parcel support the petition; and (4) the annexation will make the boundaries of the grade school and high school districts for the affected parcel identical. 105 ILCS 5/7–2b(a) (West 1998). Before this court, neither party disputes that these four conditions are met.

Before the Board's hearing officer, District 204 argued *inter alia* that the detachment and annexation of the parcel increased segregation in violation of the Equal Educational Opportunities Act of 1974. 20 U.S.C. §1701 *et seq.* (2000). The EEOA prohibits a state from denying "equal educational opportunity to an individual on account of his or her race, color, sex, or national origin." 20 U.S.C. §1703 (2000). The EEOA delineates a number of activities that constitute discrimination. Among these are the assignment of a student to a school within the district in which he or she resides other than the one closest to his or her residence "if the assignment results in a greater degree of segregation." 20 U.S.C. §1703(c) (2000). The EEOA also prohibits the transfer of a student from one school to another if "the purpose and effect of such transfer is to increase the segregation of students." 20 U.S.C. §1703(e) (2000).

District 204 claimed the detachment and annexation of the parcel increases segregation because the four individuals who petitioned for annexation are white while the population of District 204, from which

---

[1]Section 7–2b has subsequently been amended to reduce the percentage of both value and land mass that may be detached. Under the new law, the land to be detached may constitute no more than 5% of the assessed value and territory of the district. 105 ILCS 5/7–2b (West 2006). This change has no impact on this decision.

they seek to be detached, is "60% minority."[2] District 204 further asserted that allowing the "land to be detached *** from a largely minority school district (60%) and annexed to an almost completely white school district" would increase segregation based on race. On this basis, District 204 described section 7–2b as a "mechanism for 'white flight' " and stated that it fostered "division among the races" in violation of the EEOA.

The hearing officer refused to hear District 204's EEOA claim because section 7–2b contains a limiting clause that prohibits the Board from hearing any evidence or considering any issue except those necessary to determine if the four conditions of section 7–2b have been met. See 105 ILCS 5/7–2b (West 1998) ("The [Board] shall have no authority or discretion to hear any evidence or consider any issues except those that may be necessary to determine whether the limitations and conditions of this Section have been met"). The hearing officer expressly stated in his proposed findings of fact and conclusions of law that District 204's EEOA claim was "beyond the scope of the [Board's], and by extension the Hearing Officer's authority."[3] The Board accepted the hearing officer's findings of fact and conclusions of law and granted the section 7–2b petition. Thereafter, District 204 filed a complaint for administrative review with the circuit court.

On administrative review, the circuit court confirmed the Board's decision to grant the petition, noting that there was "no Constitutional problem with the actions of the [Board]." The circuit court also stated that "mere suspicion" is not sufficient to establish racial motivation. District 204 appealed this ruling.

---

[2]Because of the procedural history of this case, District 204 has never had the opportunity to establish the truth of these statements. While this court takes no position on the veracity of these assertions, we include them to illustrate the basis of District 204's EEOA claim.

[3]Public Act 91–46, which became effective on June 30, 1999, changed the body responsible for reviewing a section 7–2b petition from the Illinois State Board of Education to the Regional Board of School Trustees. This modification has no bearing on this opinion.

On appeal, the appellate court affirmed that the EEOA claim was beyond the Board's authority, but vacated the circuit court's ruling on the merits of the EEOA claim and remanded the cause to the hearing officer to develop a record on the EEOA claim.

The appellate court agreed that the limiting clause of section 7–2b prohibited the Board from hearing or considering District 204's EEOA claim. Specifically, the appellate court held that the Board "acted in accord with its mandate when it refused to determine whether section 7–2b or the proposed detachment/annexation violated the [EEOA]." 373 Ill. App. 3d at 568.

The appellate court went on to conclude that section 7–2b not only stripped the Board of jurisdiction over the EEOA claim, but also denied jurisdiction over the claim to the circuit court under administrative review law. The appellate court noted that the circuit court's power to review the decisions of administrative agencies is limited in scope to the statutory powers provided by the General Assembly. 373 Ill. App. 3d at 569, quoting Ill. Const. 1970, art. VI, §9 ("Circuit Courts shall have such power to review administrative action as provided by law"). The Code of Civil Procedure provides that a hearing for administrative review is limited to questions of law and fact that are presented to the court by the record. "No new or additional evidence *** shall be heard by the court." 735 ILCS 5/3–110 (West 2006). The appellate court reasoned that because section 7–2b limited the Board's authority to reviewing only the procedural requirements for a petition for detachment and annexation, the circuit court's authority on administrative review was similarly "limited to determining whether the Board erred in finding those requirements met." 373 Ill. App. 3d at 570. Accordingly, the appellate court vacated the circuit court's determination that the Board's actions did not violate federal law, reasoning that the Board itself "did not have jurisdiction to even develop a record which the circuit court could then rely upon in formulating any constitutional decision." 373 Ill. App. 3d at 570. Thus, the "circuit court lacked both the jurisdiction and the evidence to make such an independent finding." 373 Ill. App. 3d at 569.

Finally, the appellate court found that section 7–2b was preempted by the EEOA and remanded the cause to the Board to conduct a hearing on District 204's EEOA claim. The appellate court

noted that " 'state law is nullified to the extent that it actually conflicts with federal law.' " 373 Ill. App. 3d at 572, quoting *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022 (1982). The appellate court noted that the right of a student to be assigned to a school on the basis of geography and not race, as provided in the EEOA, could not be nullified by state action. Thus, the court reasoned that section 7–2b's "restricting the Board's ability to hear claims of racial segregation, ' "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the EEOA.]" ' " 373 Ill. App. 3d at 572, quoting *Fidelity Federal Savings & Loan Ass'n*, 458 U.S. at 153, 73 L. Ed. 2d at 675, 102 S. Ct. at 3022, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67-68, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404 (1941). Therefore, the appellate court found that section 7–2b's limitation clause was preempted by the EEOA under the supremacy clause of the United States Constitution and remanded the cause to the Board for further consideration. 373 Ill. App. 3d at 573.

In its petition for leave to appeal to this court, the Board argues that the appellate court erred in holding that section 7–2b was preempted by the EEOA. We granted the Board's petition. For the following reasons, we reverse the decision of the appellate court.


QUESTION PRESENTED

Both parties agree that District 204's EEOA claim must be heard and decided by a body of competent jurisdiction. The parties disagree over the proper means of effectuating this hearing.

The Board, as appellant, takes the position that the EEOA does not require the Board to review EEOA claims and that these claims are better developed in and decided by the circuit court. Conversely, District 204 argues that the EEOA mandates that an "educational agency," in this case the Board, consider its EEOA claim. Therefore, District 204 asserts that the appellate court was correct and that section 7–2b must be preempted because it conflicts with the EEOA by prohibiting the Board from hearing the EEOA claim.

District 204 further argues that the Board's position is infeasible, as the circuit court is prohibited from considering its EEOA claims because administrative review is the exclusive means of reviewing an

administrative decision and section 7–2b prevents the development of a record that is sufficient given the limited scope of administrative review. Thus, District 204 argues that the current legislative framework is preempted because it is intentionally crafted to make it "impossible for a factual record regarding the effect of segregation to be considered when determining whether to grant a petition for detachment." District 204 notes that "[s]tates have an affirmative duty to take measures to comply with the mandate set forth in the EEOA," and that the current legislative framework represents the General Assembly's "naked attempt to sidestep the federal mandate set forth in the EEOA."

There are then two areas of dispute between the parties. First, the parties argue whether the EEOA requires that the Board consider the EEOA in granting a petition for detachment/annexation. Second, if the Board does not have to consider the EEOA, the parties dispute whether the circuit court can review an alleged violation outside of administrative review.

The resolution of both arguments turns on the constitutional law doctrine of preemption. However, in the first argument, preemption is only implicated if we agree with District 204's interpretation of the EEOA. Therefore, the initial question presented for the first argument is a question of statutory interpretation, as this court must determine what the EEOA mandates of an "educational agency."

The second argument presents a question of preemption, as this court must determine whether the current legislative framework creates a situation where the state can avoid compliance with "the mandate set forth in the EEOA."

STANDARD OF REVIEW

Whether state law is preempted by a federal statute is a question of law, which is subject to *de novo* review. *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 15 (2006), citing *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 288 (2002). Similarly, questions of statutory interpretation present questions of law and are therefore reviewed *de novo*. *Harshman v. DePhillips*, 218 Ill. 2d 482, 490 (2006).

ANALYSIS

The underlying basis of both arguments is preemption. The preemption doctrine originates with the supremacy clause of article VI of the United States Constitution, which provides that the "Laws of the United States *** shall be the supreme Law of the Land; and Judges in every State shall be bound thereby, any Thing in the Constitution or laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, when state law conflicts with a federal statute, state law is preempted by the supremacy clause and its application is unconstitutional. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 388, 147 L. Ed. 2d 352, 371, 120 S. Ct. 2288, 2302 (2000); see also *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 540, 150 L. Ed. 2d 532, 550, 121 S. Ct. 2404, 2414 (2001).

A state statute may be preempted in three situations. First, a statute may be preempted through the express language of a congressional enactment. *Lorillard Tobacco Co.*, 533 U.S. at 540-41, 150 L. Ed. 2d at 550, 121 S. Ct. at 2414, citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992). A state statute may also be preempted where the "depth and breadth of a congressional scheme" implies that Congress "occupies the legislative field." *Lorillard Tobacco Co.*, 533 U.S. at 541, 150 L. Ed. 2d at 550, 121 S. Ct. at 2414; see also *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982). Finally, a statute may be preempted where the state law presents a "conflict with a congressional enactment." *Lorillard Tobacco Co.*, 533 U.S. at 541, 150 L. Ed. 2d at 550, 121 S. Ct. at 2414; see also *Geier v. American Honda Motor Co.*, 529 U.S. 861, 146 L. Ed. 2d 914, 120 S. Ct. 1913 (2000).

In the present case, only the latter form of preemption, conflict preemption, is at issue. Conflict preemption occurs where " 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Crosby*, 530 U.S. at 373, 147 L. Ed. 2d at 361, 120 S. Ct. at 2294, quoting *Hines*, 312 U.S. at 67, 85 L. Ed. at 587, 61 S. Ct. at 404. An obstacle to a congressional objective is sufficient to find preemption when a state law would operate in a way that a federal statute, when considered as a whole, would be rendered ineffective and its purpose and intended effects

frustrated. *Crosby*, 530 U.S. at 373, 147 L. Ed. 2d at 361, 120 S. Ct. at 2294 (citing *Savage v. Jones*, 225 U.S. 501, 533, 56 L. Ed. 1182, 1195, 32 S. Ct. 715, 726 (1912), and *Hines*, 312 U.S. at 67 n.20, 85 L. Ed. at 587 n.20, 61 S. Ct. at 404 n.20).

In the present case, the Board asserts that the appellate court erred in finding preemption on two bases. First, that the EEOA does not require that the Board, as an "educational agency," consider the segregative effect that a section 7–2b petition would have on the parties. Second, that review of District 204's EEOA claim can be had outside of administrative review under the circuit court's original jurisdiction. We will address each argument in turn.

I

The first argument presented by the Board that the appellate court erred in finding that the EEOA preempts section 7–2b is that "nothing in the EEOA specifically requires [EEOA] claims to be decided by the [Board], rather than by a circuit court." Under the Board's view, the two statutes do not directly conflict and, therefore, the limiting clause of section 7–2b is constitutional.

District 204, in reply, argues that the EEOA requires an "educational agency" to consider racial segregation in making school assignment decisions. Thus, District 204 argues that section 7–2b's limiting clause prevents the Board from considering the EEOA and is thus preempted.

Both parties agree that section 7–2b's limiting clause prevents the Board from considering the EEOA in making decisions on detachment/annexation petitions. The limiting clause of section 7–2b states that the Board "shall have no authority or discretion to hear any evidence or consider any issues except those that may be necessary to determine whether the limitations and conditions of this Section have been met." 105 ILCS 5/7–2b (West 1998). As noted previously, section 7–2b contains four provisions that must be met before a petition for detachment/annexation can be granted. EEOA compliance is not among these four factors. See 105 ILCS 5/7–2b (West 1998).

However, the parties disagree as to what the EEOA requires of "educational agencies." District 204 cites to section 1703 of the

EEOA to support its conclusion that educational agencies are required to enforce the EEOA. Section 1703 states:

> "No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by–
>
> > (a) the deliberate segregation *by an educational agency* of students on the basis of race, color, or national origin among or within schools;
> >
> > ***
> >
> > (c) the assignment *by an educational agency* of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation *** than would result if such students were assigned to the school closest to his or her place of residence ***." (Emphases added.) 20 U.S.C. §1703 (2000).

District 204 reads section 1703 as a requirement that the Board, as an educational agency,[4] not only refrain from engaging in discriminatory conduct, but affirmatively consider whether a proposed detachment/annexation petition would violate the EEOA.

The resolution of this argument rests on statutory interpretation grounds, as this court must decide whether Congress intended to charge "educational agencies" with an affirmative duty to consider the EEOA before making an administrative decision.

The goal of statutory interpretation is to ascertain and give effect to the intent of the legislative body. The simplest and surest means of effectuating this goal is to read the statutory language itself and give the words their plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). A statute must be read in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *Gill v. Miller*, 94 Ill. 2d 52, 56

---

[4]The parties agree that the Board is an "educational agency" as defined by the EEOA and the Elementary and Secondary Education Act of 1965. See 20 U.S.C. §1720(a) (2000), and 20 U.S.C. §7801(26)(A), (26)(E) (Supp. 2005).

(1983). Where the language of the statute is clear and unambiguous, it must be applied as written, without resort to other tools of statutory construction. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 255 (2004).

The EEOA is a remedial statute designed to "specify appropriate remedies for the orderly removal of the vestiges of the dual school system." 20 U.S.C. §1701(b) (2000). A "dual school system" is one "in which students are assigned to schools solely on the basis of race, color, sex, or national origin." 20 U.S.C. §1702(a)(1) (2000). The remedies specified by Congress as part of the EEOA are "not intended to modify or diminish the authority of the courts of the United States." 20 U.S.C. §1702(b) (2000).

Section 1703 of the EEOA expressly forbids the states from denying equal educational opportunity when it states that "[n]o State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin." 20 U.S.C. §1703 (2000). The EEOA goes on to list a number of ways that a state can deny equal educational opportunity. Each of these examples anticipates that an "educational agency" has undertaken the discriminatory action or failed to rectify previous discriminatory actions. (*I.e.*, "the failure of an educational agency *** to take affirmative steps *** to remove the vestiges of a dual school system" (20 U.S.C. §1703(b) (2000)) and "discrimination by an educational agency *** in the employment, employment conditions, or assignment to schools of its faculty or staff" (20 U.S.C. §1703(d) (2000)).)

The EEOA views "educational agencies" as the political subdivision of the state that is either engaging in discrimination or failing to rectify past discrimination. The EEOA defines an "educational agency" as "a local educational agency or a 'State educational agency' as defined by section 801(k) of the Elementary and Secondary Education Act of 1965." 20 U.S.C. §1720 (2000).[5] A "local educational agency" is defined as:

[5]The definitions of "local educational agency" and "State educational agency" have subsequently been recodified multiple times. The definitions are now available at 20 U.S.C. §7801 (Supp. 2005).

"[A] public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, *or other political subdivision of a State*, or of or for a combination of school districts or counties *that is recognized in a State as an administrative agency* for its public elementary schools or secondary schools." (Emphases added.) 20 U.S.C. §7801(26)(A) (Supp. 2005).

A "State educational agency" is similarly defined as "the State educational agency in a State in which the State educational agency is the sole educational agency for all public schools." 20 U.S.C. §7801(26)(E) (Supp. 2005).

The combination of the EEOA's prohibition on states denying individuals access to equal educational opportunity and the definition of an "educational agency" as a political subdivision of the state demonstrates that Congress intended that states and their "educational agencies" not engage in discriminatory conduct. This point is reinforced by District 204 when they cite *Gomez v. Illinois State Board of Education*, 811 F.2d 1030 (7th Cir. 1987), to support its contention that the Board is responsible for enforcement of the EEOA as well as the courts. *Gomez*, 811 F.2d at 1038 ("relief is to be obtained from the state and its agencies"). However, the quotation used by District 204, taken in context, shows that relief was "to be obtained from the state and its agencies" in court. The passage from *Gomez* cited by District 204 went on to include the 7th Circuit's holding, which was that "Congress intended to abrogate the states' Eleventh Amendment immunity to the extent such immunity would foreclose recovery under that act." *Gomez*, 811 F.2d at 1038. In other words, *Gomez* stands for the proposition that the EEOA allows the courts to hold the state and its agencies liable for past discriminatory actions. It does not stand for the idea that the Board must adjudicate or even consider the racially discriminatory impact of its actions.

The prohibition on acting in a discriminatory way is not the same as an affirmative mandate to take certain actions or to conduct formal proceedings to ensure that the actions taken are not discriminatory. There is no language in the EEOA that prescribes that any state or

"educational agency" take any affirmative step to consider the segregative effects of their actions prior to taking them.

What the EEOA does provide is that if the state or an "educational agency" does take a discriminatory action or has taken a discriminatory action in the past that these "agencies" may either take voluntary steps to remedy the past discrimination (20 U.S.C. §1716 (2000)) or in the absence of action that these agencies are liable in court (20 U.S.C. §§1712, 1713, 1714, 1716, 1717, 1718 (2000)).

Certainly, a state can choose to mandate that its "educational agency" consider the EEOA in granting a petition for detachment/annexation. However, the EEOA does not require that states mandate educational agencies to consider the EEOA or vest them with the power to consider the segregative effect of detachment/annexation petitions. Preemption requires an actual conflict such that "it is impossible *** to comply with both state and federal law" and where the challenged law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530 U.S. at 372-73, 147 L. Ed. 2d at 361, 120 S. Ct. at 2294. That is not the case here.

The EEOA uses the term "educational agencies" to describe potential discriminatory actors, but ultimately it is the discriminatory actions of the state and its agencies that are to be corrected by the court. It is the state that must provide relief for the discriminatory actions of its subdivisions. Under the supremacy clause, "state courts share responsibility for the application and enforcement of federal law" (*Howlett v. Rose*, 496 U.S. 356, 372-73, 110 L. Ed. 2d 332, 351 110 S. Ct. 2430, 2441 (1990)) and a state court cannot refuse to hear a federal claim as long as they would entertain a similar claim under state law. *Howlett*, 496 U.S. at 369-73, 110 L. Ed. 2d at 348-51, 110 S. Ct. at 2439-41. Illinois recognizes numerous claims for both racial discrimination and the invalidation of agency actions. See, *e.g.*, *Board of Education v. Cady*, 369 Ill. App. 3d 486 (2006), and *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 522 (2000). Therefore, the courts

of Illinois have an obligation to review and enforce the EEOA.[6] It is this obligation that we direct our attention to next.

II

The second argument presented by the Board to refute the appellate court's finding of preemption is that administrative review is not the exclusive means of challenging the Board's decision to grant a petition for detachment/annexation. The Board argues that District 204's EEOA claim may be brought under the circuit court's original jurisdiction.

District 204 counters that the EEOA requires states to take affirmative steps to "remove vestiges of a dual school system" and to not "deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin." 20 U.S.C. §1703 (2000). District 204 asserts that administrative review is the exclusive means of reviewing the Board's decision because the administrative review law states that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons." 735 ILCS 5/3–103 (West 2006). In the present case, District 204 seeks review of a final decision of an administrative agency. Further, District 204 notes that on administrative review, the circuit court is limited to the record developed before the administrative body (see 735 ILCS 5/3–110 (West 2006)) and section 7–2b prohibits the Board from considering the EEOA. Thus, if administrative review is the exclusive means of challenging the Board's decision, then section 7–2b, in conjunction with the scope of the circuit court's jurisdiction on administrative review, would effectively prohibit the state from stopping a potentially discriminatory action under the EEOA. Thus, the EEOA would preempt section 7–2b, as the EEOA mandates that the state must not allow discriminatory action.

---

[6]This does not exclude the possibility that a federal claim is initially considered and decided by an administrative tribunal and comes before the court only under an exercise of the court's statutory power for administrative review.

-14-

Thus, District 204 asserts that either section 7–2b's limiting clause or the administrative review statute must be invalidated and thereby allow for consideration of its EEOA claim. However, this problem exists only if administrative review is the exclusive means of challenging the Board's decision.

The Board asserts that the way to both obtain a hearing on the Board's decision and avoid declaring a statute unconstitutional is to allow District 204 to bring the EEOA claim as an independent cause of action under the circuit court's original jurisdiction. This would allow District 204 to bring its EEOA claim in the circuit court and develop a factual record before the circuit court. Under the Board's argument this action could either progress independently or be consolidated with an action for administrative review. The Board notes, and District 204 does not dispute, that under this approach there is no preemption issue. In this way, District 204's EEOA claim can be fully litigated, and this court avoids invalidating a statute. For the following reasons, we believe that this is the correct approach.

As a creation of statute, the Board may exercise only the authority given to it by statute. "Any power or authority it exercises must find its source within the law pursuant to which it was created." *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481, 485 (2007). As previously noted, section 7–2b's limitation clause serves to severely limit the evidence that a party may introduce into the record before the Board. While the General Assembly could have vested the Board with the power to hear District 204's EEOA claim, it did not. So long as the right to equal educational opportunity can be vindicated, however, the wisdom of the General Assembly's choice in this regard is not for this court to decide.

The Code of Civil Procedure states that on administrative review the circuit court is limited to "questions of law and fact presented by the entire record before the court. No new or additional evidence *** shall be heard by the court." 735 ILCS 5/3–110 (West 2006). Therefore, to the extent that section 7–2b restricts the evidence that the Board may place in the record, the circuit court is similarly restricted in its administrative review. Thus, the circuit court on administrative review is no better able to address District 204's EEOA claims than the Board was in the first instance.

The Illinois Constitution of 1970 vests the circuit courts with original jurisdiction over "all justiciable matters except when the Supreme Court has original and exclusive jurisdiction." Ill. Const. 1970, art. VI, §9. As this court has noted,

> "Our current constitution does not define the term 'justiciable matters,' nor did our former constitution, in which this term first appeared. See Ill. Const. 1970, art. VI, §9; Ill. Const. 1870, art. VI, §9 (amended 1964). Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002).

In this case, there is a controversy between private citizens who wish to detach property from a government entity, the Board who wishes to defend the law, and a second government body that opposes the proposed action. There is nothing abstract or moot about the controversy. It affects the legal relationship between the parties and the parties have adverse legal interests. Therefore, the current case constitutes a "justiciable matter" under the Illinois Constitution's grant of original jurisdiction to the circuit courts. In addition to the case falling within the circuit court's original jurisdiction, this case may also be handled as an independent action because the traditional rules of forfeiture do not apply.

Ordinarily, any issue that is not raised before the administrative agency, even constitutional issues that the agency lacks the authority to decide, will be forfeited by the party failing to raise the issue. In *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, this court refused to address a claim that the Department of Employment Security had violated the due process clauses of both the United States Constitution and Illinois Constitution because the issue had not been raised at the first opportunity, before the administrative agency. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002) ("constitutional claim is [forfeited] for failure to raise it at the first opportunity"). This has led this court to admonish litigants to "assert a constitutional challenge on the record before the administrative tribunal, because

-16-

administrative review is confined to the proof offered before the agency." *Carpetland U.S.A., Inc.*, 201 Ill. 2d at 397. See also *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278 (1998). ("It is well-recognized that a litigant's right to question the validity of a statute is subject to [forfeiture] by act or omission").

However, in this instance, the ordinary forfeiture rules do not apply because section 7–2b prohibits the development of a record with regard to the EEOA claim. The limiting clause of section 7–2b denies District 204 all opportunity to develop a record with regard to an EEOA violation before the administrative agency. Thus, there can be no forfeiture, because there was no opportunity to present the issue. In essence, there was no "first opportunity."

Similarly, the exclusivity of the administrative review law does not apply where, as described above, the issue being raised cannot be introduced before the administrative agency. In the present case, section 7–2b operates as a complete bar to the Board's even receiving evidence on anything outside of section 7–2b's requirements. Neither the parties nor this court have found any similar limitation anywhere else in the statutes of this state. As this court held in *Chestnut v. Lodge*, "[t]he Administrative Review Act is a salutary act to provide a simple single review from specified administrative decisions, but it was not intended to be a trap for the unwary to establish a bar to relief." *Chestnut v. Lodge*, 34 Ill. 2d 567, 571 (1966). District 204's EEOA claim is beyond the scope of the hearing officer, beyond the scope of the Board's administrative decision, and therefore beyond the scope of the administrative review law.

The Board points out that handling the EEOA claim as an independent action under the circuit court's original jurisdiction is not without precedent. In *Board of Education of Rich Township High School District No. 227 v. Brown*, the appellate court allowed a constitutional challenge to section 7–2b to be brought as an independent action in the circuit court. In doing so, the appellate court rejected an expansion of the Board's power, holding that the limiting clause of section 7–2b expressly placed the issue outside of the Board's authority and outside the court's statutory authority to review the decisions of administrative agencies. *Board of Education of Rich Township High School District No. 227 v. Brown*, 311 Ill. App. 3d 478 (1999). However, the court noted that while the issue may be

outside the scope of the administrative agency's authority, and outside the scope of administrative review, it was not outside the scope of the circuit court's original jurisdiction under the Illinois Constitution. Therefore, the court held that the circuit court could develop the record necessary to decide the constitutional challenge under an exercise of the circuit court's original jurisdiction. *Rich Township*, 311 Ill. App. 3d at 491.[7]

District 204 contends that adopting this approach will allow school district boundaries to be "redrawn without considering the effect of such a maneuver on educational segregation." Neither party disputes that District 204's EEOA claim must be considered and decided by a court of competent jurisdiction. Through the exercise of the circuit court's original jurisdiction, the circuit courts may conduct proceedings, receive evidence, and fully adjudicate District 204's EEOA claim. Further, given the nature of this claim, there is no reason why a plaintiff could not seek an injunction pending resolution of this claim in the circuit court. See *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 148 (1992) ("Circuit courts have traditionally used *mandamus, certiorari*, injunction and other actions as a means of reviewing the decisions of administrative agencies").

CONCLUSION

Because District 204's EEOA claim is subject to adjudication by the circuit court as a matter of original jurisdiction, there is no preemption, as section 7–2b does not present an obstacle to the "accomplishment and execution of the full purposes and objectives" of the EEOA. Accordingly, we reverse that portion of the appellate

---

[7]In *Rich Township*, the circuit court did not ultimately have to develop this record because the record had been adequately developed before the Board, the limitations of section 7–2b not withstanding. However, this holding is not *dicta* because regardless of where the factual record was developed, the circuit court still had to have jurisdiction to consider and enter judgment in the case.

decision that held section 7–2b was preempted by the EEOA. We remand the matter to the circuit court.

*Reversed and remanded.*

JUSTICE FREEMAN, specially concurring:

This court holds that the circuit court of Will County has original jurisdiction to adjudicate the claim of Joliet Township High School District 204 (District 204), brought pursuant to the Equal Educational Opportunities Act of 1974 (EEOA) (20 U.S.C. §1701 *et seq.* (2000)). Consequently, this court further holds that the EEOA does not preempt and render unconstitutional section 7–2b of the Illinois School Code (105 ILCS 5/7–2b (West 1998)). Slip op. at 18-19.

I fully agree with the court's reasoning and result. I write separately to urge the General Assembly to amend section 7–2b of the School Code to allow a school board to hear disputes regarding equal educational opportunity when determining section 7–2b petitions. Such disputes should be heard initially by a school board and not a court. Also, I caution the circuit court in this case, on remand, to base its findings on sufficient evidence and not conjecture.

## I. BACKGROUND

Four individuals who were all of the registered voters of a contiguous 320-acre parcel of farm land in Will County petitioned the Illinois State Board of Education (Board) to detach their property from District 204 and annex it to Lincoln Way Community High School District No. 210 (District 210), pursuant to section 7–2b of the School Code (105 ILCS 5/7–2b (West 1998)). Section 7–2b provides that, under specific circumstances, land may be automatically detached from one district and annexed to another district, at either the elementary or high school level. See M. Guenther & B. Wright, *Creation, Dissolution, and Boundary Changes*, in 1 Illinois School Law §1.11 (Ill. Inst. for Cont. Legal Educ. 2005). The Board held an administrative hearing on the detachment and annexation petition. District 204 claimed, *inter alia*, that granting the petition would violate the EEOA, which prohibits the transfer of a student from one school to another if the transfer results in increasing student racial

segregation. See 20 U.S.C. §1703 (2000). District 204 alleged that petitioners are white, the population of District 204 is "60% minority," and District 210 is "almost completely white." District 204 argued that granting the petition would increase racial segregation in violation of the EEOA. The hearing officer specifically found that District 204's EEOA claim was beyond its statutory and regulatory authority. It is undisputed that petitioners met section 7–2b's four specific conditions. Accordingly, the Board granted the section 7–2b petition. Slip op. at 2-4.

On administrative review, the circuit court confirmed the Board's decision granting the petition. Additionally, the circuit court independently found that the Board's decision did not "create a Constitutional impediment," or violate federal law. On appeal, the appellate court: vacated the circuit court's ruling on the merits of District 204's EEOA claim; held that the EEOA preempted section 7–2b of the School Code and rendered it unconstitutional; and remanded the cause to the Board to conduct a hearing on the EEOA claim. Slip op. at 4-5.


## II. ANALYSIS

Before this court, District 204 essentially raises two issues:

> "The current legislative framework developed by the General Assembly is a naked attempt [A] to sidestep the federal mandate set forth in the EEOA by stripping away an agency's ability to consider the effect of detachment on racial segregation, and [B] then tie the hand of the circuit courts on review through application of the Administrative Review Act."

While future litigation will shed light on the first claim, this court correctly rejects the second contention.


A. *De Jure* Segregation and Equal Educational Opportunity

Section 7–2b of the School Code mandates an *automatic* detachment and annexation procedure that expressly prohibits consideration of surrounding circumstances. This unique automatic procedure can potentially promote illegal student segregation. The potential for such a consequence flies in the face of constitutional

-20-

principles that the United States Supreme Court first enunciated over 50 years ago, and decisions that this court issued over a century ago, upholding the right of children to attend public schools free of *de jure* segregation.

1. *Authority to Change School District Boundaries*

Within constitutional limitations, the legislature ultimately controls the creation, division, and abolishment of school districts. *People v. Wood*, 411 Ill. 514, 522 (1952). This court has repeatedly recognized that any school district established under enabling legislation is:

> " 'entirely subject to the will of the legislature thereafter. With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. *** The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and the district may be abolished. All this at the will of the legislature.' " *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 155 (2006), quoting *People ex rel. Dixon v. Community Unit School District No. 3*, 2 Ill. 2d 454, 465-66 (1954).

This court has further explained that a school district is a quasi-municipal corporation created by the state to act as its administrative arm to implement the establishment of free schools. *Wood*, 411 Ill. at 522. The legislature may delegate its power to change school district boundaries to school authorities, who exercise that power in their discretion, guided by statutory standards. *School District No. 79 v. County Board of School Trustees*, 4 Ill. 2d 533, 538-40 (1954). Although the residents of a school district may initiate a petition for detachment and annexation because of personal desires or convenience, the decision to change established school district boundaries rests within the discretion of the appropriate school agency. *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees*, 12 Ill. 2d 190, 193 (1957).

Of course, the legislature must exercise this significant power within constitutional limitations. School district lines are not sacrosanct and they must not conflict with the fourteenth amendment. See *Milliken v. Bradley*, 418 U.S. 717, 744, 41 L. Ed. 2d 1069, 1091, 94 S. Ct. 3112, 3127 (1974).

## 2. *Constitutional Principles*

One scholar has identified *Brown v. Board of Education*, 347 U.S. 483, 98 L. Ed. 873, 74 S. Ct. 686 (1954), "as having the most impact on education law." 4 J. Rapp, Education Law §10.01[1], at 10–3 (2008). In *Brown*, the United States Supreme Court repudiated the doctrine of "separate but equal," which the Court first enunciated in *Plessy v. Ferguson*, 163 U.S. 537, 41 L. Ed. 256, 16 S. Ct. 1138 (1896). The Court in *Brown* observed that *de jure* (state-imposed) racial segregation of students is in itself an evil that tends to frustrate the affected students "in a way unlikely ever to be undone." *Brown*, 347 U.S. at 494, 98 L. Ed. at 880, 74 S. Ct. at 691. The Court held as follows:

> "We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment." *Brown*, 347 U.S. at 495, 98 L. Ed. at 881, 74 S. Ct. at 692.

*Brown* is significant partly because the United States Supreme Court reversed years of constitutional history that permitted the segregation of students based on race or color. "It righted a legal and moral wrong. But as important–perhaps more important–is that *Brown* ushered in a new era of broader educational opportunity." 4 J. Rapp, Education Law §10.01[1], at 10–3 (2008). Today, the idea that segregation based on race or color is inherently unequal is "a statement of clear constitutional principle and not a matter of educational conjecture." 4 J. Rapp, Education Law §10.05[1], at 10–75 (2008).

The decision in *Brown* invalidated only *de jure* segregation in public schools, *i.e.*, segregation resulting from intentional governmental action. In contrast, *de facto* segregation occurs without any governmental action that is intended to segregate. Unintentional *de facto* segregation, by itself, does not violate the fourteenth amendment. *Dayton Board of Education v. Brinkman*, 433 U.S. 406, 413, 53 L. Ed. 2d 851, 859, 97 S. Ct. 2766, 2772 (1977); see 3 R. Rotunda & J. Nowak, Treatise on Constitutional Law §18.9(a)(ii)(1), at 488 (4th ed. 2008); 4 J. Rapp, Education Law §10.05[1], at 10–74 through 10–75 (2008); 3 J. Cook & J. Sobieski, Civil Rights Actions ¶16.02, at 16–5 (2008); E. Reutter, The Law of Public Education 794-95 (3d ed. 1985).

In *Keyes v. School District No. 1*, 413 U.S. 189, 37 L. Ed. 2d 548, 93 S. Ct. 2686 (1973), the Court addressed for the first time the constitutionality of racial imbalance in a school system that had "never been operated under a constitutional or statutory provision that mandated or permitted racial segregation in public education." *Keyes*, 413 U.S. at 191, 37 L. Ed. 2d 553, 93 S. Ct. at 2688. Nevertheless, the Court held that where "school authorities have carried out a systematic program of segregation affecting a substantial portion of the students, schools, teachers, and facilities within the school system, it is only common sense to conclude that there exists a predicate for a finding of the existence of a dual school system." *Keyes*, 413 U.S. at 201, 37 L. Ed. 2d at 559, 93 S. Ct. at 2694. "Correction of such actions comes within the direct mandate of Brown, for it is segregation which has developed, not fortuitously, but by governmental action. Although often called de facto segregation, it is really 'covert de jure' segregation." E. Reutter, The Law of Public Education 795 (3d ed. 1985). The Court emphasized that the crucial difference between *de jure* and *de facto* segregation is the intent to discriminate. The Court endorsed a burden-shifting procedure designed to adduce the intent necessary to prove "covert *de jure*" segregation where the law does not expressly authorize segregation. *Keyes*, 413 U.S. at 208, 37 L. Ed. 2d at 563, 93 S. Ct. at 2697; see *Brinkman*, 433 U.S. at 420, 53 L. Ed. 2d at 863, 97 S. Ct. at 2775; 3 R. Rotunda & J. Nowak, Treatise on Constitutional Law §18.9(a)(ii)(1), at 490-92 (4th ed. 2008) 4 J. Rapp, Education Law §10.04[3], at 10-69 through 10–70, §10.05[3], at 10–86 through

10–90 (2008); 3 J. Cook & J. Sobieski, Civil Rights Actions ¶16.02, at 16–8 through 16–12 (2008). *Keyes* exemplifies that "the Equal Protection Clause [is] aimed at all official actions, not just those of state legislatures. *** Even actions of state agents that may be illegal under state law are attributable to the State." *Columbus Board of Education v. Penick*, 443 U.S. 449, 457 n.5, 61 L. Ed. 2d 666, 676 n.5, 99 S. Ct. 2941, 2946 n.5 (1979).

### 3. *Equal Educational Opportunities Act of 1974*

The EEOA is a multipurpose statute. The Act declares it to be a policy of the United States that "all children enrolled in public schools are entitled to equal educational opportunity without regard to race, color, sex, or national origin." 20 U.S.C. §1701(a)(1) (2000).[8] To effectuate this policy, the EEOA prohibits in pertinent part:

> "No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by–
>
> * * *
>
> (c) the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex, or national origin among the schools of such agency than would result if such student were assigned to the school closest to his or her place of residence within the school

---

[8]The EEOA also declares it to be a policy of the United States that "the neighborhood is the appropriate basis for determining public school assignments." 20 U.S.C. §1701(a)(2) (2000). It is generally recognized that Congress enacted the EEOA in reaction to court decisions upholding busing as a means of remedying *de jure* segregation. See 4 J. Rapp, Education Law §10.06[5], at 10-121 (2008); 3 J. Cook & J. Sobieski, Civil Rights Actions ¶16.19, at 16–96 through 16–97 (2008). The Act directs federal courts not to use busing to remedy *de jure* segregation "unless the court first finds that all alternative remedies are inadequate." 20 U.S.C. §1755 (2000).

district of such agency providing the appropriate grade level and type of education for such student;

***

(e) the transfer by an educational agency, whether voluntary or otherwise, of a student from one school to another if the purpose and effect of such transfer is to increase segregation of students on the basis of race, color, or national origin among the schools of such agency." 20 U.S.C. §1703 (2000).

With respect to racial desegregation, the EEOA is essentially a restatement of preexisting case law, and its prohibitions are mostly coextensive with the equal protection clause of the fourteenth amendment. 4 J. Rapp, Education Law §10.02[3], at 10–19 (2008); 3 J. Cook & J. Sobieski, Civil Rights Actions ¶16.19, at 16–99 (2008).

### 4. *Segregation in Illinois Schools*

*De jure* racial segregation existed in Illinois at the time of the ratification of the fourteenth amendment. In 1825, the General Assembly provided for the establishment of public schools, which were "open and free to every class of *white* citizens, between the ages of five and twenty-one years." (Emphasis added.) 1833 Ill. Laws 556. The 1857 School Code did not *expressly* exclude black children from public schools but, rather, *impliedly* limited public schools to white children. 1857 Ill. Laws 260, §7 (requiring state superintendent to periodically report to Governor on, *inter alia*, "the number of white persons in each county under twenty-one years of age"), 1857 Ill. Laws 263, §16 (requiring school commissioner to apportion state funds among school districts in county based on, in part, "the number of white children, under twenty-one years of age"), 1857 Ill. Laws 292, §80 ("In townships in which there shall be persons of color the board of trustees shall allow such persons a portion of the school fund equal to the amount of taxes collected for school purposes from such persons of color in their respective townships"); see generally B. Reams & P. Wilson, Segregation and The Fourteenth Amendment in the States 138-54 (1975); D. Douglas, *The Limits of Law in*

*Accomplishing Racial Change: School Segregation in the Pre-Brown North*, 44 UCLA L. Rev. 677, 695-96 (1997).

In 1867, the General Assembly ratified the fourteenth amendment. In 1874, the legislature enacted legislation that expressly prohibited the exclusion of any child from a public school based on race. Ill. Rev. Stat. 1874, ch. 122, par. 100. In a series of decisions beginning in 1874, this court repeatedly ruled against racial segregation in education in the face of local defiance. See, *e.g.*, *Chase v. Stephenson*, 71 Ill. 383 (1874); *People ex rel. Longress v. Board of Education of the City of Quincy*, 101 Ill. 308 (1882); *People ex rel. Peair v. Board of Education of Upper Alton School District*, 127 Ill. 613 (1889); *People ex rel. Bibb v. Mayor & Common Council*, 193 Ill. 309 (1901). Against this backdrop, I turn to article 7 of the Illinois School Code.

### 5. *Detachment and Annexation: Overall Benefit*

"The most typical" school boundary changes are the result of the detachment of a portion of school district territory and its annexation to another school district. See C. Russo & R. Mawdsley, Education Law §1.04[3], at 1–19 through 1–20 (2008). In Illinois, school district boundaries may be changed by detachment, annexation, division, dissolution, or by any combination of those methods pursuant to article 7 of the School Code. 105 ILCS 5/7–02 (West 2006). The general method for detachment and annexation involves a petition process, administrative hearings, and the potential for judicial review pursuant to the Administrative Review Law (735 ILCS 5/3–101 *et seq.* (West 2006)). See 105 ILCS 5/7–1, 7–2, 7–6, 7–7 (West 2006).

At the administrative hearing on a detachment and annexation petition, section 7-6 of the School Code mandates that the hearing officer:

> "shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils

-26-

that such change in boundaries be granted ***." 105 ILCS 5/7–6(i) (West 2006).

Based on the language of section 7–6, a petition for detachment and annexation should be granted only where the overall benefit to the annexing district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding community as a whole. *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 356 (1992) (collecting cases).

In applying this benefit-detriment test, the hearing board, and the courts reviewing the board's decision, are to consider differences between school facilities and curricula, the distances from the petitioners' homes to the respective schools, the effect detachment would have on the ability of either district to meet state standards of recognition, and the impact of the proposed boundary change on the tax revenues of both districts. *Carver*, 146 Ill. 2d at 356. The hearing board may also consider the closely related "whole child" and "community of interest" factors. The "whole child" factor "recognizes that extracurricular participation in social, religious and even commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement." *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees of Cook County*, 89 Ill. 2d 392, 397 (1982). The "community of interest" factor ascertains whether the petitioning area is identified with the school district and the community to which annexation is requested. If a child attends school in his or her natural community, it not only enhances the child's educational opportunity but encourages the child's participation in social and other extracurricular activities that figure importantly in the "whole child" concept. *Golf*, 89 Ill. 2d at 397-98. Further, consideration of the racial impact of a school district boundary change is relevant to a detachment and annexation proceeding "to ensure that a dual school system based upon race, national origin, or color does not result." C. Russo & R. Mawdsley, Education Law §1.04[3], at 1–19, 1–20 (2008). See, *e.g.*, *In re Petition for Authorization to Conduct a Referendum on the Withdrawal of North Haledon School District from the Passaic County Manchester Regional High School District*, 181 N.J. 161, 181-82, 854 A.2d 327, 339 (2004); *Union Title Co. v.*

*State Board of Education*, 51 Ohio St. 3d 189, 192 n.5, 555 N.E.2d 931, 934 n.5 (1990).

Indeed, it is recognized that "Illinois is exceptionally active in detachment proceedings. *** A review of Illinois detachment cases over the past two decades indicates that the judicial emphasis is consistently focused on the concepts of the 'whole child,' the 'community of interests' and 'the educational welfare of the students.' " J. Menacker, *Illinois Detachment Legislation: A Device for Creating Manageable Urban School Districts*, 81 Educ. L. Rep. 411, 414-19 (1993). However, in enacting the automatic detachment procedure in section 7–2b of the School Code, the legislature pointedly rejected this well-settled holistic approach.

### 6. *Section 7–2b:* Automatic *Procedure*

Section 7–2b of the School Code provides for the detachment and annexation of noncoterminous land from an elementary or high school district. In contrast to the procedure for detachment and annexation generally, section 7–2b mandates that a detachment and annexation petition "shall" be granted if the affected land constitutes 10% or less of the district's equalized assessed value and of its territory; two-thirds of the registered voters in affected area support the petition; and the annexation will make the boundaries of the elementary school and high school districts for the affected land identical. 105 ILCS 5/7–2b(a) (West 1998); slip op. at 3.

The legislature originally added this procedure to the School Code in 1991. Pub. Act 87–667, eff. September 20, 1991 (adding Ill. Rev. Stat. 1991, ch. 122, par. 7–2b). Further, to ensure that this procedure is truly automatic, the legislature subsequently added a directive to section 7–2b, which at the time of these proceedings read as follows:

> "The regional board of school trustees shall have no authority or discretion to hear any evidence or consider any issues except those that may be necessary to determine whether the limitations and conditions of this Section have been met." Pub. Act 87–1270, §2, eff. March 3, 1993 (amending Ill. Rev. Stat. 1991, ch. 122, par. 7–2b).

Among the issues that the legislature expressly excludes from consideration is whether granting a detachment and annexation

petition would deny public school children the equal educational opportunity guaranteed by the equal protection clause of the fourteenth amendment. Obviously, such a result is untenable.

School authorities have the primary responsibility for elucidating, assessing, and solving the problem of unconstitutional racial discrimination in public education. *Brown v. Board of Education* (*Brown II*), 349 U.S. 294, 299, 99 L. Ed. 1083, 1105, 75 S. Ct. 753, 756 (1955). It is recognized that detachment and annexation of school district territory can operate to perpetuate segregation. See C. Russo & R. Mawdsley, Education Law §1.04[3], at 1–19, 1–20 (2008). Surprisingly, the General Assembly expressly prohibits the Board from even considering this constitutional issue when presented with a section 7–2b petition. In a case presenting a more blatant example of legislative obstructionism, the United States Supreme Court declared as follows:

> "[T]he prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action [citations]; or whatever the guise in which it is taken [citations]. In short, the constitutional rights of children not to be discriminated against in school admission on grounds of race or color declared by this Court in the *Brown* case can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted 'ingeniously or ingenuously.' [Citation.]" *Cooper v. Aaron*, 358 U.S. 1, 17, 3 L. Ed. 2d 5, 16, 78 S. Ct. 1401, 1409 (1958).

No state legislator, executive, or judicial officer can war against the Constitution without violating his or her oath to support it. *Cooper*, 358 U.S. at 18, 3 L. Ed. 2d at 16-17, 78 S. Ct. at 1409-10.

To be sure, the general detachment and annexation procedure, with its petition process, administrative hearings, and potential for judicial review, can be described as "cumbersome." J. Menacker, *Illinois Detachment Legislation: A Device for Creating Manageable Urban School Districts*, 81 Educ. L. Rep. 411, 413 (1993). This court long ago admitted that the applicable standards "are general rather than specific in nature. However, it would be both impossible and undesirable for the legislature to draft rigid nondiscretionary

standards which would embrace each and every school district boundary change, for conditions surrounding the changes are seldom the same." *District No. 79*, 4 Ill. 2d at 537-38. Further: " 'The judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interest of the schools and the pupils affected by a change in boundaries.' " *Carver*, 146 Ill. 2d at 362, quoting *School Directors of School District No. 82 v. Wolever*, 26 Ill. 2d 264, 267 (1962).

Disputes regarding equal educational opportunity obviously must be heard in the first instance by some public body, and that body should be the Board. I urge the General Assembly to amend section 7–2b to lift this prohibition from the Board when determining section 7–2b petitions.


B. Safeguarding Equal Educational Opportunity

Of course, this legislative oversight cannot prevent judicial intervention to safeguard the fundamental goal of equal educational opportunity. This court correctly holds that the circuit court of Will County has original jurisdiction to adjudicate District 204's EEOA claim. Slip op. at 13-14, 16-18. Indeed, the circuit court has jurisdiction to hear not only the EEOA claim, but all claims brought under the full panoply of federal and Illinois remedial legislation for the vindication of equal educational opportunity. See *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823, 108 L. Ed. 2d 834, 839-40, 110 S. Ct. 1566, 1568-69 (1990) (holding that state courts have inherent authority to adjudicate federal claims and that Congress must affirmatively divest state courts of their concurrent jurisdiction).

On remand, the circuit court will have the obligation to hear any claim that District 204 may bring, and to receive relevant evidence in support thereof. Surprisingly, the circuit court made the following independent finding in confirming the Board's grant of the section 7–2b petition:

> "While one may have suspicions as to why property owners may want to detach their land from one district and attach it to another, mere suspicions are not enough. There is *nothing in this record* to establish any type of racial motivation on the part of the parties seeking disconnection. On the record before the Hearing Officer it appears that the

reason for the disconnection was to properly align elementary and high school boundaries so that students who attend New Lennox Grade School District 122 could attend [h]igh school at Lincolnway with their friends.

Now, this court is not so naïve as to not understand that there may well be an economic benefit to a developer going from one school district to another. Clearly, this land in question will be used for development purposes. However, even if that is the motivation, *which is unclear from the record*, that in and of itself does not create a Constitutional impediment or a violation of Federal law. The Court finds no Constitutional problem with the actions of the State Board of Education." (Emphasis added.)

The circuit court correctly observed that the record contained no evidence regarding District 204's EEOA claim because section 7–2b of the School Code prohibited the Board from receiving such evidence.

"It is essential to the sufficiency of findings of a court that they be sustained by the evidence." *Hanaman v. Davis*, 20 Ill. App. 2d 111, 115 (1959). In this case, it was impossible for the circuit court to find no constitutional or statutory violation because section 7–2b prohibited the Board from receiving any evidence supporting District 204's claim. Such indiscriminate comments "do not aid in the administration of justice but on the contrary are a distinct obstruction." *Lewis v. West Side Trust & Savings Bank of Chicago*, 288 Ill. App. 271, 275 (1937). On remand, I assume that the circuit court will provide an analysis based on the relevant evidence presented by the parties, rather than conjecture based on no evidence at all.

## III. CONCLUSION

The enduring legacy of *Brown v. Board of Education* is that the doctrine of "separate but equal" has no place in the field of public education. Segregation based on race, color, or national origin deprives students of the equal protection of the laws guaranteed by the fourteenth amendment. *Brown*, 347 U.S. at 495, 98 L. Ed. at 881, 74 S. Ct. at 692. I recommend that the General Assembly amend section 7–2b of the School Code to effectuate this constitutional

requirement more efficiently. Meanwhile, on remand, I am confident that the circuit court will fully and fairly decide the merits of any claims that District 204 chooses to bring.