864 So.2d 1061 (2003)
McGUFFEY HEALTH AND REHABILITATION CENTER
v.
Zadie GIBSON, by and through her next friend, Dorothy JACKSON.
1020289.
Supreme Court of Alabama.
May 9, 2003.
Reed R. Bates and R. Todd Huntley of Starnes & Atchison, LLP, Birmingham, for appellant.
H. Edgar Howard of Ford, Howard & Cornett, P.C., Gadsden, for appellee.
HOUSTON, Justice.
This medical-malpractice action involves only one issue: Whether the trial court erred in holding that an admission agreement signed on behalf of Zadie Gibson by Dorothy Jackson with McGuffey Health and Rehabilitation Center ("McGuffey") did not evidence a transaction that substantially affected interstate *1062 commerce so as to require Gibson's medical-malpractice action against McGuffey to be arbitrated in accordance with the arbitration provision in the admission agreement.
It is undisputed that on October 30, 2001, Jackson, on Gibson's behalf, signed an admission agreement with McGuffey pursuant to which Gibson was to be admitted to a nursing home operated by McGuffey; that agreement included an arbitration clause that would require arbitration of Gibson's medical-malpractice claim against McGuffey if the admission agreement evidenced a transaction that substantially affects interstate commerce.
Gibson was injured on May 29, 2002, when she fell from her bed in the nursing home. In her complaint, Gibson alleges that McGuffey "failed to secure [Gibson] in her bed using appropriate instrumentalities, whereupon [Gibson] was unable to prevent herself from falling from her bed." Gibson alternatively alleges that McGuffey "failed to monitor [Gibson] when they knew or should have known that without appropriate assistance and/or monitoring there existed a likelihood that [Gibson] would fall."
"The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995)." Transouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The parties here do not dispute the existence of a contract calling for arbitration.
This Court, in Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759, 761-62 (Ala.2000), stated that a party seeking to compel arbitration must prove that the transaction had a "substantial effect" on interstate commerce before the party can compel another party to resolve their differences by arbitration. Sisters of the Visitation, which involved a construction contract, listed five factors to evaluate in determining whether a transaction has a substantial effect on interstate commerce: 1) the citizenship of the parties; 2) whether the tools and equipment moved in interstate commerce; 3) the allocation of the cost of services and materials; 4) whether the object of the contract is capable of subsequent movement across state lines; and 5) the degree of separability from other contracts. 775 So.2d at 765-66.
In this case, all the parties to this action are citizens of Alabama. The items McGuffey purchased to carry out its daily obligations to Gibson in accordance with the admissions agreement moved in interstate commerce: the wheelchairs McGuffey used were manufactured in Wisconsin; the hospital beds were manufactured in Indiana and Texas; the housekeeping, cleaning supplies, and laundry chemicals originated in Minnesota; and the food was from Georgia.[1]
*1063 In Potts v. Baptist Health System, Inc., 853 So.2d 194 (Ala.2002), we concluded that although the defendants, who sought arbitration, did not provide sufficient evidence regarding all of the Sisters of the Visitation factors, they had presented sufficient evidence of certain of those factors. In Potts, there was evidence indicating that a sizeable portion of the materials Potts used in treating patients was purchased in interstate commerce and that Potts used many of those goods on a daily and recurring basis throughout the course of her employment with the defendants. 853 So.2d at 204. We concluded in Potts that the employment relation between Potts and the defendants did have a substantial effect on interstate commerce, and we affirmed the order compelling arbitration. 853 So.2d at 207.
It is undisputed that Medicare paid McGuffey $21,676 for the care and treatment of Gibson during her seven-month stay at the nursing home and that Medicaid paid McGuffey $11,691.26 for Gibson's care and treatment. The Medicare funds (two-thirds of all sums received by McGuffey for services rendered to Gibson) originated with the federal government and passed through Mutual of Omaha located in Omaha, Nebraska, before being paid to McGuffey in Alabama. McGuffey receives between 15% and 20% of its total gross income from Medicare. Funds flowing from outside the State should be considered in determining if an agreement substantially affects interstate commerce. American General Fin., Inc. v. Branch, 793 So.2d 738 (Ala.2000); Lewis v. Conseco Fin. Corp., 848 So.2d 920 (Ala.2002). We have never directly addressed the issue whether Medicare funds moving across state lines should be considered to establish the interstate-commerce prong required in determining whether parties must arbitrate. The parties have not directed us to any cases from other jurisdictions involving this issue. McGuffey, though acknowledging that the following cases are in some respects distinguishable from this case, directs us to Summit Health Ltd. v. Pinhas, 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991); BCB Anesthesia Care, Ltd. v. Passavant Memorial Area Hospital Association, 36 F.3d 664 (7th Cir.1994); McElhinney v. Medical Protective Co., 549 F.Supp. 121 (E.D.Ky.1982). In those cases, which were antitrust actions, the receipt of Medicare funds from out of state was considered in establishing the necessary nexus with interstate commerce. We hold that Medicare funds should be considered in determining whether the admission agreement had a substantial effect on interstate commerce.
Because two-thirds of all sums received by McGuffey for the care and treatment of Gibson came from out of state, and because materials were purchased directly from out-of-state vendors to feed Gibson, to provide her bedding, and to keep her and her surroundings clean, we hold that the admissions agreement had a substantial effect on interstate commerce, without considering the items listed in footnote one; therefore, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
*1064 LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE, J., concurs in the result.
MOORE, C.J., and JOHNSTONE, J., dissent.
JOHNSTONE, Justice, dissenting.
I respectfully dissent. The main opinion continues the now apparently inexorable evisceration of the "substantial-effect-on-interstate-commerce" test, see, e.g., my dissent in Potts v. Baptist Health System, Inc., 853 So.2d 194 (Ala.2002), and thereby gratuitously extends the reach of the Federal Arbitration Act further than ever before, in ever worse derogation of the public policy of Alabama, see Woodmen of the World Life Insurance Society v. Harris, 740 So.2d 362, 366 (Ala.1999).
NOTES
[1] Many of Gibson's medications, including Lortab, Paxil, Ativan, Prevacid, Sonata, Bactroban, Aricept, and Ultram, were manufactured outside Alabama and shipped across state lines to Turenne Pharmedco, Inc. ("Turenne"), a distribution center in Montgomery, Alabama; McGuffey then purchased the medications from Turenne. Likewise, restraint-free monitor alarms, bed bumper pads, and other nonpharmaceutical supplies used by McGuffey for Gibson's care and maintenance were manufactured outside Alabama and shipped across state lines to Turenne; McGuffey then acquired them from Turenne. Nowhere in the record is there an explanation of the relationship between McGuffey and Turenne. McGuffey clearly proved that all of the pharmaceuticals and nonpharmaceutical supplies listed in this footnote were manufactured outside Alabama and shipped across state lines. There was no commingling so that the point of origin could not be discovered, as was the case in Ex parte Kampis, 826 So.2d 819, 822 (Ala.2002). However, because the relationship between McGuffey and Turenne is uncertain, we are aware that, under the rationale of the plurality holding in Kampis, the pharmaceuticals and nonpharmaceutical supplies McGuffey acquired from Turenne to use in treating Gibson under the admission agreement may have come to rest at Turenne's, so that the flow of interstate commerce had ceased before McGuffey acquired them from Turenne. But see Katzenbach v. McClung, 379 U.S. 294, 296-302, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964).