No. 2--08--1005    Filed: 5-8-09  Corrected: 3-1-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| MARIE FOSLER, | ) | Appeal from the Circuit Court |
| by Janice Saxton, Attorney-in-Fact, | ) | of Winnebago County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08--L--148 |
| | ) | |
| MIDWEST CARE CENTER II, INC., | ) | |
| d/b/a Fair Oaks Rehabilitation and Health | ) | |
| Care Center, BRENNA KOLK, and | ) | |
| TONYA NIELSEN, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | Ronald L. Pirrello, |
| (The People of the State of Illinois, Intervenor). | ) | Judge, Presiding. |

_____

Modified Upon Denial of Rehearing

JUSTICE BURKE delivered the opinion of the court:

Plaintiff, Marie Fosler, filed a complaint against defendants, Midwest Care Center II, Inc., d/b/a Fair Oaks Rehabilitation and Health Care Center, Brenna Kolk, and Tonya Nielsen, for relief under the Nursing Home Care Act (210 ILCS 45/1--101 et seq. (West 2006)) and for negligence. Plaintiff alleges wrongful injuries suffered during her stay at defendants' long-term care facility, Fair Oaks Rehabilitation and Health Care Center (Fair Oaks). As part of the admission to Fair Oaks, plaintiff, through her daughter, Janice Saxton, entered into a written agreement. The agreement

contained a provision stating that any dispute arising from plaintiff's stay would be resolved through arbitration, as governed by the Federal Arbitration Act (FAA) (9 U.S.C. §1 et seq. (2000)).

Defendants answered the complaint with a motion to enforce the arbitration provision, arguing that plaintiff had waived her right to sue. Plaintiff responded that certain provisions of the Nursing Home Care Act nullify a resident's waiver of the right to commence an action in circuit court and to a trial by jury. Faced with deciding whether the FAA or the Nursing Home Care Act applies to the arbitration provision, the trial court denied defendants' motion based on Carter v. SSC Odin Operating Co., LLC, 381 Ill. App. 3d 717 (2008), in which the Appellate Court, Fifth District, concluded that the FAA does not preempt the Nursing Home Care Act.

Defendants appeal, arguing that Carter was wrongly decided and that, therefore, the trial court erred in denying the motion to compel arbitration. We agree. Carter cannot be reconciled with Perry v. Thomas, 482 U.S. 483, 96 L. Ed. 2d 426, 107 S. Ct. 2520 (1987), in which the United States Supreme Court held that the FAA preempts state statutes that require "that litigants be provided a judicial forum for resolving *** disputes." Perry, 482 U.S. at 491, 96 L. Ed. 2d at 436, 107 S. Ct. at 2526. In agreement with Perry and similar decisions issued by the Court, we hold that section 2 of the FAA preempts the provisions of the Nursing Home Care Act that purport to nullify a resident's waiver of the right to commence an action in the circuit court and to a jury trial. We reverse the denial of defendants' motion to compel arbitration and remand the cause for further proceedings consistent with this opinion.

FACTS

The factual background is simple and undisputed. Plaintiff was a resident of Fair Oaks from September 1, 2004, to August 17, 2007. On the date of admission, Saxton, acting as plaintiff's

authorized representative, executed the admission agreement, which contained the contractual terms for plaintiff's stay.

The agreement contains an arbitration section, which provides that "any dispute between you and us and any dispute relating to services rendered for any condition, and any dispute arising out of the diagnosis, treatment, or care of the Resident, including the scope of this arbitration clause and the arbitrability of any claim or dispute, against whomever made (including, to the full extent permitted by applicable law, third parties who are not signatories to this Agreement) shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure then in effect. *** This Agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16." The arbitration section also states in bold text that "Resident understands that the result of this arbitration agreement is that claims, including malpractice claims that Resident may have against the Facility or its employees cannot be brought as a lawsuit in court before a judge or jury, and agrees that all such claims will be resolved as described in this section."

On January 23, 2008, plaintiff filed a complaint alleging violations of the Nursing Home Care Act and negligence.[1] Defendants responded to the complaint with a motion to compel arbitration. Defendants asserted that plaintiff was contractually bound by the arbitration section of the admission agreement to resolve any dispute according to the FAA. Defendants contended that the FAA preempted any provision of the Nursing Home Care Act that would otherwise bar enforcement of the contract's arbitration section. On September 26, 2008, relying upon Carter, the trial court denied

---

[1]Plaintiff died on July 31, 2008. Saxton, plaintiff's surviving daughter, was appointed as special representative of the estate as the suit was converted to a survival action. See 735 ILCS 5/13--209(a) (West 2006); 755 ILCS 5/27--6 (West 2006).

defendants' motion to compel arbitration. Defendants filed their timely notice of appeal on October 23, 2008.

ANALYSIS

On appeal, defendants argue that the trial court erred in denying their motion to compel arbitration. Ruling on a motion to compel arbitration is injunctive and, therefore, is appealable under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). Salsitz v. Kreiss, 198 Ill. 2d 1, 11 (2001). Where a trial court makes no factual findings and its decision is based purely on a question of law, the decision to grant or deny a motion to compel arbitration is subject to de novo review. Vassilkovska v. Woodfield Nissan, Inc., 358 Ill. App. 3d 20, 24 (2005); Ragan v. AT&T Corp., 355 Ill. App. 3d 1143, 1147 (2005) (when a motion to compel arbitration is denied without an evidentiary hearing, the standard of review on appeal is de novo); cf. In re Marriage of Rife, 376 Ill. App. 3d 1050, 1061 (2007) ("Under the discretionary provision of the [Declaratory Judgment] Act, the trial court's decision whether a declaratory judgment proceeding is proper at all is subject to deferential, if 'searching,' review. However, nothing in the Act requires that a trial court's resolution of the merits of the complaint be entitled to deference. To impose such a requirement would make the trial court the primary authority on questions of law, inverting the hierarchy of lower court and higher court"). We review the trial court's decision de novo because the court heard no evidence and considered only argument, which the parties restate on appeal.

Plaintiff contends that sections 3--606 and 3--607 of the Nursing Home Care Act nullify the arbitration provision of the admission agreement, in which she purportedly waived her right to initiate an action in circuit court and to have her claims heard by a jury. Section 3--606 of the Nursing Home Care Act provides that "[a]ny waiver by a resident or his legal representative of the right to commence an action under Sections 3--601 through 3--607, whether oral or in writing, shall

be null and void, and without legal force or effect." 210 ILCS 45/3--606 (West 2006). Section 3--607 further provides that "[a]ny party to an action brought under Sections 3--601 through 3--607 shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect." 210 ILCS 45/3--607 (West 2006).

Defendants rely upon the FAA. In 1925, Congress enacted the FAA " 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts[ ] and to place arbitration agreements upon the same footing as other contracts.' " Borowiec v. Gateway 2000, Inc., 209 Ill. 2d 376, 384 (2004), quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991). Section 2 of the FAA provides in relevant part that "a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000). Section 4 of the FAA provides for court orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. §4 (2000). Defendants contend that section 2 of the FAA conflicts with sections 3--606 and 3--607 of the Nursing Home Care Act and that, therefore, the former preempts the latter.

The preemption doctrine is based on the supremacy clause of article VI of the United States Constitution, which provides that the "Laws of the United States *** shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, when a state law conflicts with a federal statute, the state law is preempted under the supremacy clause and

application of the state law is unconstitutional. Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210, 231 Ill. 2d 184, 195 (2008), citing Crosby v. National Foreign Trade Council, 530 U.S. 363, 388, 147 L. Ed. 2d 352, 371, 120 S. Ct. 2288, 2302 (2000); see also Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 540, 150 L. Ed. 2d 532, 550, 121 S. Ct. 2404, 2414 (2001).

A state statute may be preempted three ways. First, a statute may be preempted through the express language of a congressional enactment. Board of Education, Joliet Township High School District No. 204, 231 Ill. 2d at 195, citing Lorillard Tobacco Co., 533 U.S. at 540-41, 150 L. Ed. 2d at 550, 121 S. Ct. at 2414, citing Cipollone v. Liggett Group, Inc., 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992). Second, "[a] state statute may also be preempted where the 'depth and breadth of a congressional scheme' implies that Congress 'occupies the legislative field.' " Board of Education, Joliet Township High School District No. 204, 231 Ill. 2d at 195, quoting Lorillard Tobacco Co., 533 U.S. at 541, 150 L. Ed. 2d at 550, 121 S. Ct. at 2414; see also Fidelity Federal Savings & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982). Third, "a statute may be preempted where the state law presents a 'conflict with a congressional enactment.' " Board of Education, Joliet Township High School District No. 204, 231 Ill. 2d at 195, quoting Lorillard Tobacco Co., 533 U.S. at 541, 150 L. Ed. 2d at 550, 121 S. Ct. at 2414; see also Geier v. American Honda Motor Co., 529 U.S. 861, 146 L. Ed. 2d 914, 120 S. Ct. 1913 (2000).

Here, the parties focus on the third possibility: conflict preemption. Conflict preemption occurs "when it is either 'impossible for a private party to comply with both state and federal requirements,' or 'where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' " Kinkel v. Cingular Wireless, LLC, 223 Ill. 2d 1, 18 (2006), quoting English v. General Electric Co., 496 U.S. 72, 79, 110 L. Ed. 2d 65, 74, 110 S. Ct.

2270, 2275 (1990), quoting Hines v. Davidowitz, 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404 (1941). A state law is an obstacle to a congressional objective, for preemption purposes, if the state law would operate such that "a federal statute, when considered as a whole, would be rendered ineffective and its purpose and intended effects frustrated." Board of Education, Joliet Township High School District No. 204, 231 Ill. 2d at 196, citing Crosby, 530 U.S. at 373, 147 L. Ed. 2d at 361, 120 S. Ct. at 2294 (citing Savage v. Jones, 225 U.S. 501, 533, 56 L. Ed. 1182, 1195, 32 S. Ct. 715, 726 (1912), and Hines, 312 U.S. at 67 n.20, 85 L. Ed. at 587 n.20, 61 S. Ct. at 404 n.20). Like the ultimate issue of whether arbitration should be compelled in this case, the underlying issue of whether a state law is preempted by a federal statute is a question of law, subject to de novo review. Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 288 (2002).

Our review of the trial court's decision requires interpretation of section 2 of the FAA and sections 3--606 and 3--607 of the Nursing Home Care Act. The goal of statutory interpretation is to ascertain and give effect to the intent of the legislative body. The simplest and surest means of meeting this goal is to read the statutory language and give the words their plain and ordinary meaning. A statute must be read in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. Where the language of the statute is clear and unambiguous, it must be applied as written, without resort to other tools of statutory construction. Board of Education, Joliet Township High School District No. 204, 231 Ill. 2d at 198. The "ultimate touchstone" of our preemption analysis must be the intent of Congress. Cipollone, 505 U.S. at 516, 120 L. Ed. 2d at 422, 112 S. Ct. at 2617. We look to nonbinding federal law as persuasive authority when construing a federal statute, because maintaining uniform interpretations is important. Bowman v. American River Transportation Co., 217 Ill. 2d 75, 91 (2005).

The parties correctly agree that the statutes at issue are unambiguous. They also do not dispute that, absent preemption, the Nursing Home Care Act would govern the admission agreement and plaintiff's stay at Fair Oaks.

As to section 2 of the FAA, the Supreme Court has stated, "[w]e discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.' [9 U.S.C. §2 (2000).] We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." Southland Corp. v. Keating, 465 U.S. 1, 10-11, 79 L. Ed. 2d 1, 12, 104 S. Ct. 852, 858 (1984).

Litigants in other jurisdictions have argued whether a nursing home admission agreement evidences a "transaction involving commerce" under the FAA. See, e.g., Rainbow Health Care Center, Inc. v. Crutcher, No. 07--CV--194--JHP, slip op. at 7 (N.D. Okla. January 29, 2008) ("the admissions agreements in question evidence a transaction involving interstate commerce"); McGuffey Health & Rehabilitation Center v. Gibson, 864 So. 2d 1061, 1063 (Ala. 2003) ("the admissions agreement had a substantial effect on interstate commerce"). However, plaintiff does not raise the issue in this case and, therefore, plaintiff has forfeited any argument on that point. See 210 Ill. 2d R. 341(h)(7) ("Points not argued [in the appellant's brief] are waived and shall not be raised in a reply brief, in oral argument, or on petition for rehearing"). Because plaintiff forfeits the issue of whether the admission agreement involves commerce under section 2 of the FAA, this case turns on whether sections 3--606 and 3--607 of the Nursing Home Care Act are "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000).

In Carter, the Appellate Court, Fifth District, considered whether section 2 of the FAA preempts sections 3--606 and 3--607 of the Nursing Home Care Act, which is exactly the issue before us. At the time of the resident's admission to the defendant's facility, the resident's representative executed a written " 'Health Care Arbitration Agreement,' " which required that all disputes related to the resident's care at the facility be submitted to binding arbitration and be governed by the FAA. Carter, 381 Ill. App. 3d at 718. The resident died, and her representative filed a complaint under the Nursing Home Care Act, alleging that the defendant had failed to provide adequate and properly supervised care that the resident needed. Carter, 381 Ill. App. 3d at 718. The defendant answered the complaint by denying the allegations and asserting various defenses, including the defense that the lawsuit was precluded by the agreement, which required that disputes be resolved by binding arbitration. Carter, 381 Ill. App. 3d at 719.

The defendant in Carter argued that section 2 of the FAA preempted the state law contract defense of a violation of public policy, because the public policy expressed in sections 3--606 and 3--607 of the Nursing Home Care Act does not apply to all contracts but specifically targets arbitration agreements. Carter, 381 Ill. App. 3d at 721. The Carter court rejected that notion, holding that, "because the public policy expressed in sections 3--606 and 3--607 concerns the validity, revocability, and enforceability of contracts generally and does not specifically target arbitration agreements, it presents a legitimate state law contract defense of a violation of public policy to the agreements and so voids the agreements." Carter, 381 Ill. App. 3d at 722-23.

Indeed, public policy can be a defense to enforcing a contract. While Illinois courts strongly favor freedom of contract, a court will declare a contract void if it contravenes the public policy of this state. H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc., 209 Ill. 2d 52, 57 (2004). Public policy is the legal principle that no one may lawfully do that which has the tendency

to injure the welfare of the public.  O'Hara v. Ahlgren, Blumenfeld & Kempster, 127 Ill. 2d 333, 341 (1989).  Thus, agreements are not void as against public policy unless they are " 'clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless they [are] manifestly injurious to the public welfare.' "  H&M Commercial Driver Leasing, Inc., 209 Ill. 2d at 57, quoting Schumann-Heink v. Folsom, 328 Ill. 321, 330 (1927).

In holding that the FAA does not preempt sections 3--606 and 3--607 of the Nursing Home Care Act, Carter relies entirely upon Perry and Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 683, 134 L. Ed. 2d 902, 906, 116 S. Ct. 1652, 1654 (1996).  Specifically, Carter focuses on the Supreme Court's pronouncement that "state law applies and is not preempted by section 2 of the FAA ' "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," ' but that a ' "state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with" ' the text of the FAA."  (Emphasis in original.)  Carter, 381 Ill. App. 3d at 721, quoting Casarotto, 517 U.S. at 685, 134 L. Ed. 2d at 907, 116 S. Ct. at 1655, quoting Perry, 482 U.S. at 492 n.9, 96 L. Ed. 2d at 437 n.9, 107 S. Ct. at 2527 n.9).  While we agree that Perry and Casarotto guide the analysis, we conclude that Carter misinterprets this authority.

In Perry, the Supreme Court held that section 2 of the FAA preempted a California statute that provided a judicial forum for actions for the collection of wages " 'without regard to the existence of any private agreement to arbitrate.' "  Perry, 482 U.S. at 484, 96 L. Ed. 2d at 432, 107 S. Ct. at 2522-23, quoting Cal. Lab. Code Ann. §229 (West 1971).  The Court noted that section 2 " 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' "  Perry, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting Moses H. Cone Memorial Hospital v. Mercury

Construction Corp., 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983). By enacting section 2, " 'Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' " Perry, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting Southland, 465 U.S. at 10, 79 L. Ed. 2d at 12, 104 S. Ct. at 858. Section 2 "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce," in which case section 2 would simply not apply, or the contract "is revocable 'upon such grounds as exist' " under state law for the revocation of the contract. Perry, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525. The Court concluded, " '[w]e see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.' " Perry, 482 U.S. at 489-90, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting Southland, 465 U.S. at 11, 79 L. Ed. 2d at 12, 104 S. Ct. at 858.

Years before Perry held that the FAA preempted the California statute, the California appellate court commented on the reason for the state law's enactment. The court found the purpose of the statute to be "quite clear" in that, "[w]hile the strong public policy of the state favors arbitration (Federico v. Frick, 3 Cal. App. 3d 872, 875), the intent of the statute is to provide in the first instance a judicial forum where there exists a dispute as to wages." Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 24 Cal. App. 3d 35, 43, 100 Cal. Rptr. 791, 797 (1972), aff'd, 414 U.S. 117, 38 L. Ed. 2d 348, 94 S. Ct. 383 (1973). In other words, the California statute was a manifestation of the state's public policy in favor of a judicial forum for resolving disputes about unpaid wages. In fact, the enactment showed that the state's interest in providing a judicial forum for wage disputes, specifically, outweighed the state's policy favoring arbitration, generally.

Like sections 3--606 and 3--607 of the Nursing Home Care Act, the California statute was a manifestation of a public policy in favor of a judicial forum for resolving a certain type of dispute, and Perry held that the FAA preempted the California statute. Perry, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting 9 U.S.C. §2 (2000). Neither Carter nor plaintiff reconciles how the public policy underlying the California statute is different from the public policy favoring a judicial forum underlying the Nursing Home Care Act.

We recognize that sections 3--606 and 3--607 of the Nursing Home Care Act do not mention arbitration explicitly, while the California statute did so, providing a judicial forum for actions " 'without regard to the existence of any private agreement to arbitrate.' " Perry, 482 U.S. at 484, 96 L. Ed. 2d at 432, 107 S. Ct. at 2522-23, quoting Cal. Lab. Code Ann. §229 (West 1971). We view the distinction to be inconsequential. The California statute operated no differently from sections 3--606 and 3--607 of the Nursing Home Care Act. With or without the mention of arbitration, the California statute still would guarantee that " '[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained.' " Ware, 24 Cal. App. 3d at 43, 100 Cal. Rptr. at 797, quoting Cal. Lab. Code Ann. §229 (West 1971). The phrase "without regard to the existence of any private agreement to arbitrate" does not mean that the statute applies only when there is an agreement to arbitrate.

Just like the Nursing Home Care Act, the California statute provided a plaintiff a judicial forum regardless of whether the contract mandated arbitration, mediation, or some other form of non-judicial dispute resolution. Carter does not recognize that this type of "pro-judicial forum" legislation is the functional equivalent of "anti-arbitration" legislation, which is preempted by section 2 of the FAA. On the other hand, Perry recognizes this functional equivalence, holding that "[t]his clear federal policy [in favor of rigorously enforcing private arbitration agreements] places §2 of the

[FAA] in unmistakable conflict with California's §229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way." Perry, 482 U.S. at 491, 96 L. Ed. 2d at 436, 107 S. Ct. at 2526.

We discern no difference between the public policy in favor of providing a judicial forum under the California statute in Perry and under the Nursing Home Care Act here. Until the Supreme Court is persuaded that a state statute that manifests a public policy in favor of a judicial forum is a general defense to contract enforceability for the purposes of the FAA, we are compelled to follow Perry and reject Carter. See County of Du Page v. Illinois Labor Relations Board, 359 Ill. App. 3d 577, 581 (2005) (the holdings of one appellate district are not automatically binding on another district, unlike a decision of our supreme court, which all appellate courts must follow).

Our conclusion is consistent with Cusamano v. Norrell Health Care, Inc., 239 Ill. App. 3d 648 (1992), where the Appellate Court, Fourth District, interpreted another Supreme Court decision as holding that the FAA preempts "any State law that denies enforcement of an arbitration clause in any contract involving interstate commerce, even when the claim at issue is a statutory claim based on the public policy of the State." Cusamano, 239 Ill. App. 3d at 656 (1992), citing Southland, 465 U.S. at 16, 79 L. Ed. 2d at 15-16, 104 S. Ct. at 861.

Our view is also consistent with Casarotto, the other case on which Carter relies. In Casarotto, the Supreme Court held that a Montana statute governing arbitration clauses, but not contracts in general, conflicted with the FAA and was, therefore, preempted. Casarotto, 517 U.S. at 683, 134 L. Ed. 2d at 906, 116 S. Ct. at 1654. The state statute provided that an arbitration clause was unenforceable unless it was in underlined capital letters printed on the first page of the contract. After summarizing its previous decisions in Perry, Southland, and other cases, the Court restated what its prior decisions had established:

" 'States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." [Citation.] What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the [FAA's] language and Congress's intent.' " (Emphasis added.) Casarotto, 517 U.S. at 686, 134 L. Ed. 2d at 908, 116 S. Ct. at 1655, quoting Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 130 L. Ed. 2d 753, 769, 115 S. Ct. 834, 843 (1995).

The Casarotto Court held that Montana's statute "directly conflicts with §2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the [FAA]." Casarotto, 517 U.S. at 687, 134 L. Ed. 2d at 909, 116 S. Ct. at 1656. The Court broadly stated, " 'state legislation requiring greater information or choice in the making of agreements to arbitrate than in other contracts is preempted' " by the FAA. Casarotto, 517 U.S. at 687, 134 L. Ed. 2d at 909, 116 S. Ct. at 1656, quoting 2 I. Macneil, R. Speidel, T. Stipanowich, & G. Shell, Federal Arbitration Law §19.1.1, at 19:4-19:5 (1995). Like the Montana statute in Casarotto, sections 3--606 and 3--607 prescribe for nursing home residents greater rights in making agreements to arbitrate than in other contracts, and, therefore, those sections are preempted by the FAA.

We acknowledge that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." Casarotto, 517 U.S. at 687, 134 L. Ed. 2d at 909, 116 S. Ct. at 1656. However, Illinois's

public policy in favor of providing a judicial forum for claims under the Nursing Home Care Act addresses a specific contract matter--dispute resolution--which places that contract term on unequal footing among the other contract terms. See Casarotto, 517 U.S. at 686, 134 L. Ed. 2d at 908, 116 S. Ct. at 1655 ("The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the [FAA's] language and Congress's intent"), quoting Allied-Bruce Terminix Cos., 513 U.S. at 281, 130 L. Ed. 2d at 769, 115 S. Ct. at 843.

Perry, Casarotto, and similar cases illustrate how Carter runs afoul of Congress's intent in enacting the FAA. Section 2 of the FAA " 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' " Perry, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting Moses H. Cone Memorial Hospital, 460 U.S. at 24, 74 L. Ed. 2d at 785, 103 S. Ct. at 941. Carter muffles that congressional declaration. Because public policy informs all state statutes to some degree, one could cite Carter for the absurd proposition that any state statute attempting to rewrite a contract provision regarding dispute resolution is a "legitimate state law contract defense of a violation of public policy" (Carter, 381 Ill. App. 3d at 723) and, therefore, is not preempted by section 2 of the FAA. Under such an interpretation, one can hardly imagine a situation where section 2 of the FAA ever would preempt a state law that addressed a party's ability to agree on the method of dispute resolution.

Illinois public policy favors arbitration as a means of resolving disputes, generally (710 ILCS 5/2(a) (West 2002)), and yet sections 3--606 and 3--607 of the Nursing Home Care Act manifest a contrary public policy in favor of providing nursing home residents a judicial forum, including a trial by jury. The incongruity illustrates how sections 3--606 and 3--607 did not "ar[i]se to govern issues concerning the validity, revocability, and enforceability of contracts generally." (Emphasis added.)

-15-

Perry, 482 U.S. at 493 n.9, 96 L. Ed. 2d at 437 n.9, 107 S. Ct. at 2527 n.9. One could argue that sections 3--606 and 3--607 are not directed toward "any contract" (see 9 U.S.C. §2 (2000)), because they apply only to a contract between a nursing home and its resident: two parties defined narrowly by statute.

In Southland, the Supreme Court considered whether the FAA preempted the California Franchise Investment Law, which required judicial consideration of claims brought under that statute. The Court stated, "a party may assert general contract defenses such as fraud to avoid enforcement of an arbitration agreement. We conclude however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity 'for the revocation of any contract' but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law." (Emphases added.) Southland, 465 U.S. at 16 n.11, 79 L. Ed. 2d at 16 n.11, 104 S. Ct. at 861 n.11. Southland holds that a statutory defense to arbitration provisions, like sections 3--606 and 3--607 of the Nursing Home Care Act, is not a ground that exists for the revocation of any contract and, therefore, is preempted by section 2 of the FAA. However, Southland does not explain whether a statutory defense to arbitration provisions is preempted because (1) the statute applies to arbitration provisions rather than to all contractual terms; (2) the statute applies to a specific type of contract, like nursing home admission agreements; or (3) both. Under the facts of this case, we need not decide whether the FAA would preempt a statutory defense to arbitration provisions in contracts generally, since the challenged sections of the Nursing Home Care Act involve both arbitration agreements and a specific type of contract.

However, we note that Rainbow construed Southland to hold that a statutory defense to arbitration provisions is preempted because the statute applies to a specific type of contract. In

Rainbow, the United States District Court for the Northern District of Oklahoma considered whether section 2 of the FAA preempted Oklahoma's Nursing Home Care Act. Sections 3--606 and 3--607 of the Nursing Home Care Act are virtually identical to the Oklahoma statute, which provided that " '[a]ny party to any action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect.' " Rainbow, slip op. at 1, quoting Okla. Stat. tit. 63, §1--1939(E) (____). The court held that "[t]he Oklahoma statute thus invalidates arbitration agreements in a specific type of contracts--those involving nursing home care. Therefore, the second limitation on the reach of the FAA [that arbitration clauses may be revoked upon grounds as exist at law or in equity for the revocation of any contract] does not apply." Rainbow, slip op. at 3.

## PETITION FOR REHEARING

On May 8, 2009, this court issued its opinion in this case. On June 1, 2009, the State petitioned for leave to intervene and moved for an extension of time to file a petition for rehearing. Based on defendants' noncompliance with Supreme Court Rule 19 (210 Ill. 2d R. 19), we allowed the State to intervene and to file a petition for rehearing. Rule 19(a) provides in relevant part that "[i]n any cause or proceeding in which the constitutionality or preemption by federal law of a statute, ordinance, administrative regulation, or other law affecting the public interest is raised, and to which action or proceeding the State or the political subdivision, agency, or officer affected is not already a party, the litigant raising the constitutional or preemption issue shall serve an appropriate notice thereof on the Attorney General, State's Attorney, municipal counsel or agency attorney, as the case may be." 210 Ill. 2d R. 19(a). The purpose of the notification requirement is to afford the State, political subdivision, agency, or officer, as the case may be, the opportunity, but not the obligation,

to intervene in the cause or proceeding for the purpose of defending the law challenged. 210 Ill. 2d R. 19(c). Rule 19(b) requires the notice to identify the particular statute, ordinance, regulation, or other law, and to briefly describe the nature of the constitutional or preemption challenge. 210 Ill. 2d R. 19(b). The notice shall be served at the time of suit, answer, or counterclaim, if the challenge is raised at that level, or promptly after the constitutional or preemption question arises as a result of a circuit or reviewing court ruling or judgment. 210 Ill. 2d R. 19(b).

In their motion to compel arbitration, defendants argued the federal preemption of the anti-arbitration provisions of the Nursing Home Care Act, thereby triggering the notification requirement of Rule 19. Defendants did not notify the Attorney General of their preemption argument at any time during the proceedings in the trial court, and thus did not comply with Rule 19. However, the appellate court has the discretion to permit late compliance with the rule (In re Marriage of Rosenbaum-Golden, 381 Ill. App. 3d 65, 71 (2008)), and we accomplished this by allowing the State to intervene and to fully argue its claims in a petition for rehearing. The State does not advocate forfeiture of defendants' preemption argument as a sanction for the Rule 19 violation, but the State has not offered any new argument that would cause us to reach a different conclusion. Accordingly, we do not deviate from our analysis of the preemption issue upon our consideration of the petition for rehearing.

The State raises three novel arguments to support plaintiff's position that the anti-arbitration provisions of the Nursing Home Care Act invalidated her contractual waiver. First, the State argues that the FAA does not apply because Fair Oaks failed to prove that the admission agreement involved interstate commerce. Second, the State argues that sections 1395 and 1396 of the Social Security Act (SSA) (42 U.S.C. §§1395, 1396 (2006)) trump the FAA. Third, the State argues that

the Health Care Arbitration Act (710 ILCS 15/1 et seq. (West 2008)) governs the arbitration agreement. We reject each argument for the following reasons.

A. Interstate Commerce

Plaintiff has forfeited any argument regarding whether the admission agreement involves interstate commerce, but the State argues that point in the petition for rehearing. The State does not seek a remand to further develop the record in the trial court. Instead, the State argues that the evidence already in the record does not show that Fair Oaks was engaged in interstate commerce at the time plaintiff was a resident. We disagree. Sheila Story, the administrator of Fair Oaks, filed an affidavit stating that (1) Fair Oaks has received and continues to receive Medicare and Medicaid payments for services provided to approximately 15% of the residents; (2) Fair Oaks received out-of-state insurance payments as well as Medicare payments on behalf of plaintiff; and (3) Fair Oaks purchases, and has purchased in the past, medical equipment, medical supplies, and over-the-counter medication from vendors outside Illinois. The State does not cite any evidence in the record to rebut the affidavit.

The Rainbow court held that "the FAA reaches the broadest amount of commercial activity allowed by the Constitution -- which can include a local business buying supplies from a company procuring those supplies from out of state." Rainbow, slip op. at 4. The court further noted that the nursing home in that case was best characterized as a business providing certain goods and services to its customers for a fee. Rainbow, slip op. at 5. The court rejected the notion that the admission agreements in that case did not involve interstate commerce simply because the facility provided its goods and services wholly within Oklahoma. Rainbow, slip op. at 5. The court emphasized that, when a person chose the facility as the provider of his or her nursing home care, that person was entering into an agreement with the facility whereby the facility was to provide that person with food,

medicine, shelter, and medical care, among other things. Rainbow, slip op. at 5. Noting that the food, medicine, and durable medical supplies used by the facility must come from somewhere, the court found that the facility obtained those materials from vendors in Texas, Kentucky, Maryland, and other states. Rainbow, slip op. at 5. Under those circumstances the court held that "the admissions agreements in question evidence a transaction involving interstate commerce." Rainbow, slip op. at 7.

Story's unrebutted affidavit leads us to the same conclusion as the one reached in Rainbow: the admission agreement in this case involved interstate commerce, and therefore, the FAA applies. Our conclusion is in agreement with those of the supreme courts of other states. See McGuffey, 864 So. 2d at 1063 (Alabama Supreme Court held "the [nursing home] admission[s] agreement had a substantial effect on interstate commerce"); Vicksburg Partners, L.P. v. Stephens, 2004--CA--01345--SCT (¶10) (Miss. 2005) ("We have thus endorsed the undisputed province of the Federal Arbitration Act" in nursing home contract cases); In re Nexion Heath at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) ("because 'commerce' is broadly construed, the evidence of Medicare payments [to the facility on the patient's behalf] is sufficient to establish interstate commerce and the FAA's application in this case").

### B. Social Security Act

The State next argues that the SSA trumps the FAA because the SSA regulates nursing homes that receive Medicare and Medicaid funds, and the SSA states that it does not limit remedies available at common law for substandard care. The State cites sections 1395i--3 and 1396r of the SSA, which regulate nursing homes that receive payments under Medicare and Medicaid. 42 U.S.C. §§1395i--3, 1396r (2006). The remedies for substandard care or treatment of nursing home residents are "in addition to those otherwise available under State or Federal law and shall not be construed

as limiting such other remedies, including any remedy available to an individual at common law." 42 U.S.C. §§1395i--3(h)(5), 1396r(h)(8) (2006). The State interprets this provision as Congress's intent to abrogate FAA preemption and to retain a nursing home resident's right to a jury trial despite any challenge or waiver.

The FAA presumptively governs all agreements evidencing transactions involving interstate commerce, but Congress can selectively preempt the FAA by enacting subsequent laws that either explicitly preempt or are wholly inconsistent with the FAA. Rainbow, slip op. at 7. " 'If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute's] text or legislative history *** or from an inherent conflict between arbitration and the statute's underlying purposes.' " Rainbow, slip op. at 7, quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227, 96 L. Ed. 2d 185, 194, 107 S. Ct. 2332, 2337-38 (1987). The State has failed to identify--and we are unaware of--any congressional command in the SSA to override preemption by the FAA. The SSA does not clearly indicate its intent to override the FAA in substandard care cases such as this one, and we do not take it upon ourselves to do so. Moreover, there is no inherent conflict between arbitration and the SSA's underlying purposes. Rainbow, slip op. at 7.

### C. Health Care Arbitration Act

Finally, the State argues that, even if the FAA preempts the anti-arbitration provisions of the Nursing Home Care Act, section 9(c) of the Health Care Arbitration Act governs the admission agreement. Among other things, section 9(c) provides that "no health care arbitration agreement shall be valid after 2 years from the date of its execution." 710 ILCS 15/9(c) (West 2008). The State argues that section 9(c) invalidates the arbitration clause of the admission agreement because plaintiff's claim arose after the two-year limitations period expired. The admission agreement was

signed on September 1, 2004, plaintiff was a resident of Fair Oaks until August 17, 2007, and plaintiff filed her complaint on January 23, 2008.

The State contends that section 9(c) is not jurisdictional or does not create a threshold prerequisite to a valid arbitration agreement and that therefore section 9(c) is not incompatible with the FAA. Further, the State argues that states still are free to regulate arbitration contracts, and the State cites cases that allow for limitations periods for appealing arbitration decisions. However, the cases upon which the State relies do not support its position.

Section 9(c) of the Health Care Arbitration Act does not purport to regulate the arbitration provision of plaintiff's admission agreement; section 9(c) would invalidate it. The FAA applies for purposes of determining the enforceability of an arbitration agreement that might otherwise be invalid under state law. Joseph v. Advest, Inc., 906 A.2d 1205, 1209 (Pa. Super. 2006). As discussed, courts may not invalidate arbitration agreements under state laws that apply only to arbitration provisions. Casarotto, 517 U.S. at 687, 134 L. Ed. 2d at 909, 116 S. Ct. at 1656 (the FAA displaces a state statute that "directly conflicts with §2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally"). The State argues, without citation to relevant authority, that only provisions that present a barrier to entering into arbitration agreements are preempted by the FAA. However, a state statute that invalidates certain arbitration agreements is preempted by the FAA.

CONCLUSION

In conclusion, we hold that plaintiff's claims are subject to arbitration under the FAA. The Supreme Court has declared "only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon

'grounds as exist at law or in equity for the revocation of any contract.' [9 U.S.C. §2 (2000).] We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under State law." Southland, 465 U.S. at 10-11, 79 L. Ed. 2d at 12, 104 S. Ct. at 858. First, plaintiff has forfeited the issue of whether the nursing home admission agreement is a contract evidencing a transaction involving commerce. Also, we reject the State's argument in its petition for rehearing that the record lacks sufficient evidence of interstate commerce. Second, we hold that the judicial forum provisions of sections 3--606 and 3--607 of the Nursing Home Care Act are not grounds as exist at law or in equity for the revocation of any contract. Furthermore, we reject the State's assertions that the SSA trumps the FAA and that the Health Care Arbitration Act governs the arbitration agreement. For these reasons, the order of the circuit court of Winnebago County is reversed and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

JORGENSEN, J., concurs.

JUSTICE O'MALLEY, specially concurring:

I write separately to clarify a point regarding the FAA's mandate that arbitration provisions cannot be revoked "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000). The majority, and the Supreme Court, have stated that this qualification is not met where the arbitration restriction at issue applies only to a specific type of contract, as opposed to "any contract." (Emphasis in original.) See slip op. at 16, quoting Southland, 465 U.S. at 16 n.11, 79 L. Ed. 2d at 16 n.11, 104 S. Ct. at 861 n.11. That is basically true--a statutory provision that applies only to a certain type of contract normally cannot be a "ground[] as exist[s] at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000). However, I would add two caveats.

First, even if a statute purports to apply to all types contracts, it does not necessarily meet the FAA's exception. The purpose of the FAA is to " 'place arbitration agreements upon the same footing as other contracts.' " Borowiec, 209 Ill. 2d at 384, quoting Gilmer, 500 U.S. at 24, 114 L. Ed. 2d at 36, 111 S. Ct. at 1651; slip op. at 5; cf. Casarotto, 517 U.S. at 686, 134 L. Ed. 2d at 908, 116 S. Ct. at 1655 (the FAA bars " 'decid[ing] that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause' "), quoting Allied-Bruce Terminix Cos., 513 U.S. at 281, 130 L. Ed. 2d at 769, 115 S. Ct. at 843. A state statute that universally bars enforcement of arbitration provisions, even though it applies to all contracts, will nonetheless still run afoul of the FAA.

Second, even a statutory provision that applies only to a certain type of contract may invalidate arbitration agreements on "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000). For example, a statute applying only to nursing home contracts could say that arbitration provisions entered into under duress are invalid. Such a statute would not run afoul of the FAA, precisely because it would confine its anti-arbitration provision to grounds as exist at law or in equity for the revocation of any contract.

The purpose of the FAA is that it prohibits laws that single out arbitration agreements from other contracts, not that it prohibits laws that single out arbitration agreements in some contracts and not others. The Supreme Court's reasoning in footnote 11 of Southland accords with that purpose only if qualified by the two caveats I raise above.